No. 13,040.

PROTECTIVE FINANCE CORPORATION *v.* NATIONAL SURETY COMPANY.
(37 P. [2d] 530)

Decided October 29, 1934.

Mr. GEORGE C. MANLEY, Mr. EVERETT E. TROUT, for plaintiff in error.

Messrs. BLOUNT, SILVERSTEIN & ROSNER, for defendant in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

COMPLAINT in two counts on an indemnity bond, first, for recovery on the bond as such; second, for reformation of the bond and recovery on the reformed instrument. From judgment for defendant plaintiff prosecutes error.

It appears that plaintiff's business is financing automobile sales and purchasing notes secured by chattel mortgages on automobiles; that defendant is authorized to execute indemnity bonds; that November 14, 1929, defendant executed its bond, contracting to indemnify plaintiff "against any loss" it might sustain "through payment * * * (1) Of any check, draft, note or any other written promise, order or direction to pay a sum certain in money: (a) Upon which the signature of the obligee as maker or drawer or acceptor thereof shall have been forged; and/or (b) made or drawn by the obligee upon which the signature of any endorser thereof shall have been forged; and/or (c) made or drawn or accepted by the obligee which shall have been raised or altered in any other respect provided it is not drawn in lead pencil which is not indelible; and/or (2) of any draft or any other written direction or order to pay a sum certain in money directed to or drawn upon or against the obligee upon which the signature of the

maker or drawer or any endorser thereof shall have been forged;'' that September 23, 1929, pending negotiations for the bond, the ''Denver District Supervisor Forgery Bond Department'' of defendant, wrote plaintiff on defendant's letterhead that, ''Confirming our conversation of last week, relative to the protection you will have under our new form of forgery bond * * *. At the present time there is no other form of coverage written that will pay these losses; * * * we would pay the amount of your loss in full up to the face amount of the bond; * * *. Your proof of claim would be substantiated by the presentation of the check in question, and the notes and mortgages and financial statements given you by the dealer as inducement for you to purchase this paper * * * the forgery bond does not specifically state that it covers a loss on automobile paper, but it does state that it will pay you for any loss sustained through the forgery of any endorsement on the back of any of your checks, and any loss that you sustain would come under this clause. * * * In either case he is deemed guilty of forgery and we would pay your loss under the terms and conditions of our bond''; that October 30, 1929, the representative of defendant wrote plaintiff on the subject of whether defendant would be liable where plaintiff accepted retail notes in substitution of wholesale notes, saying, ''I have written the superintendent of the claims department * * * and will probably have his answer in the course of a few days, at which time I will advise you in that matter,'' but it does not appear that any word came from the claims department; that from oral testimony it appeared the same representative of defendant made many statements as to what the bond they would execute contemplated in coverage; that when he proffered the bond it was rejected because it did not contain provision for losses as the agent had represented, but because of his repeated verbal assurances that the bond was what plaintiff desired and the letters to which we have referred, plaintiff finally accepted the

bond in form as originally drawn; that while the bond was in force plaintiff purchased various notes from automobile dealers, purporting to be secured by chattel mortgages on automobiles, "which said notes and chattel mortgages" as plaintiff alleged (and established), "were either forged, fictitious or by reason of fraudulent, unlawful and illegal acts" of the dealers or the ostensible makers thereof, "were forged, fictitious and void," by reason whereof plaintiff claimed right of recovery against defendant.

We are persuaded the trial court rightly resolved the issues. The parties were dealing at arm's length. Plaintiff, no less than defendant, was a corporation, officered and managed by men of affairs. The manager and directors of plaintiff noted immediately that the form of contract which their company was expected to purchase contained no provision calculated to protect against the kind of loss involved in this action, and such coverage was desired. Quite becoming to men of understanding and business firmness, they rejected it. Ultimately, however, the identical contract was accepted. Present counsel for plaintiff, not engaged at trial, do not argue that by virtue of the terms of the bond, recovery is justified, but do contend that the letters and verbal statements of defendant's local representatives operated to broaden the contract into what plaintiff required. The first answer is that the authority of the agent to make changes in the policy does not appear. The second answer is that his statements, written or verbal, do not purport to add to or alter the contract. In his letter of September 23, 1929, already largely set out, and on which is plaintiff's only alleged reliance, the agent stated that the bond does not cover "loss on automobile paper." As noted, plaintiff had already concluded to the same effect and refused the bond. But the agent, pressing for business, emphasized that "for any loss sustained through forgery of any endorsement on the back of any of your checks," the surety would pay. Neither statement had

significance.  All interested parties recognized that loss on automobile paper was not covered, and the reference to forgery of endorsements on the back of plaintiff's checks in such connection was meaningless.  We have quoted in part the letter of October 30, 1929, written to plaintiff's manager, where there was reference to exchange of wholesale notes for retail notes, thought by plaintiff to have important bearing, but in that letter the agent says, ''I believe it better for you if your directors purchase this coverage for the benefits as mentioned. Then, in case of a loss on the automobile paper they will feel much better in finding that they are protected on losses of that sort.''  The sum of the letter, as we perceive, is that while the contract was not to be couched to that end, apprehended by both parties, nevertheless, if defendant did make plaintiff whole on losses sustained through purchase of automobile paper, plaintiff's directors were going to be pleased.  We cannot believe that such a letter may be thought to have important bearing. Plaintiff's manager, and he was plaintiff's sole contacting agency during the negotiations, testified that the efforts of defendant's representative were directed toward convincing him and his company that ''by its terms'' the proffered bond constituted coverage for notes and chattel mortgages that were fictitious or forged.  He further said that he did not understand from defendant's agent that he ''would get a form to cover,'' * * * but ''that this particular form did cover,'' etc.  In such situation the trial court necessarily found, and we are bound to agree, that in appraising the rights and obligations of the parties only the bond may be considered.  Limited so, liability does not attach.

We have not overlooked other points urged by plaintiff's counsel, but on no hypothesis of the record, as we conceive, would favorable determination be justified. Let the order be that the judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.